IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT MARQUIS RAMEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 15-1461 |
| | : | |
| v. | : | |
| | : | |
| RONALD PHILLIPS (Medical Director) and KELLY MULLAN (Physician Assistant), | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.  October 11, 2016

A prison official's deliberate indifference to a prisoner's serious illness or injury constitutes cruel and unusual punishment in violation of the Eighth Amendment. In this case, the *pro se* prisoner plaintiff brought an action for an Eighth Amendment violation under 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to the injuries he sustained to his ankle and back while getting down from his top bunk bed. After discovery, one defendant filed a motion for summary judgment asserting that the plaintiff had not established that the defendant had acted deliberately indifferent towards his medical needs. The record shows that the plaintiff received treatment for his injuries, and though the plaintiff disputes its adequacy, the treatment he received passes constitutional muster. There being no genuine dispute of material fact necessitating a jury trial, the court will grant the defendant's motion for summary judgment and dismiss the claim against the second defendant for failure to state a claim on which relief may be granted.

## I. FACTUAL RECORD AND PROCEDURAL HISTORY

At the time of the incident giving rise to this lawsuit, the *pro se* plaintiff, Robert Marquis Ramey ("Ramey"), was incarcerated at the George W. Hill Correctional Facility (the "Hill Facility").[1] Amended Complaint ("Am. Compl.") at 2, Doc. No. 11. Sometime between September 11, 2013 and September 13, 2013, Ramey landed awkwardly on his ankle when he leaped out of the top bunk of his bed, which did not have a ladder from which he could climb down.[2] *Id.* at 3. When medical staff saw him on September 18, 2013, Ramey denied any injury, but stated that he had difficulty lifting his right leg. Opp., Ex. 1 at ECF p. 10, Doc. No. 43.[3] The attending care provider, Kelly Mullan ("Mullan"), noted the following in her report:

> MARQUIS RAMEY, 32 year old Black Male complains of pt [sic] sent to medical secondary to possible symptoms of CVA. Pt observed sitting in hallway of medical smiling at other inmates. When pt moves to another chair in the hallway, pt observed limping to chair and using the wall to brace himself. Pt states that he is having difficulty lifting his right leg since Friday. Denies injury; states he woke up and has had difficulty lifting his right leg since. Denies any other areas of weakness. . . . Will observe pt in medical overnight and follow up with MD in AM.

*Id.*

On September 19, 2013, another attending care provider noted "prominent swelling" in Ramey's ankle. *Id.* at ECF p. 12. The care provider provided Ramey with Motrin and a splint, took an x-ray of his ankle, and kept him in the medical unit for a week. *Id.*; Defendant's Mem. in Supp. of Mot. for Summ. J. ("Def. Mem.") at 2, Doc. No. 34. On September 25, 2013, while still in the medical unit, Ramey saw Dr. Phillips, who noted that his ankle was "stable and not

---

[1] Ramey is currently incarcerated at SCI Benner Township.
[2] Ramey states that the injury occurred on or around September 11, 2013, admitting that he is unsure. Am. Compl. at ¶ 10. Medical records indicate that Ramey complained of being unable to lift his leg since the Friday before September 18, 2013, which would have been September 13, 2013. Plaintiff's Resp. to Defs.' Mot. For Summ. J. ("Opp."), Ex. 1 at ECF p. 10, Doc. No. 43.
[3] Exhibit 1 consists of several documents designated with nonconsecutive Bates numbers. Accordingly, and where appropriate, the court will refer to the page number by its Electronic Case Filing ("ECF") page number.

swollen." Opp., Ex. 1 at ECF p. 13.  At that point, Dr. Phillips gave Ramey a bottom bunk pass so that he would not need to attempt to jump down from the top bunk in the future.  *Id.*

On October 4, 2013, Ramey requested to go to the medical unit, stating in his request: "I have a back injury and I would like to be seen."  *Id.* at ECF p. 14.  That day, the attending care provider provided Ramey with Motrin and analgesic balm to apply to the affected area.  Opp., Ex. 3.  On November 13, 2013, Ramey filed an inmate grievance, in which he stated that he injured his back and foot, that he was seen and housed in the medical unit for a week, and that he went back to medical on September 25.  Opp., Ex. 2.  He also said:  "Every [sic] since my injury I haven't been able to walk straight and my right foot feel [sic] dead.  I need some real medical treatment so I can re strength [sic] myself, cause I'm feeling weak and vulnerable."  *Id.*  On November 18, 2013, a warden responded to his grievance, noting that Ramey had been seen by Dr. Phillips, and advising Ramey that if he needed to be seen again, he should make a sick call rather than filing a grievance.  *Id.*

Ramey filed another grievance on January 15, 2014, in which he stated: "The medical treatment I received on Sept. 25 was of no help because I'm in an extreme amount of pain.  A sprain [sic] ankle is the least of my worries.  In my opinion, I believe I crack [sic] a vertebrae cause I can't stand straight for a long period of time."  Opp., Ex. 3.  On January 20, 2014, a health service administrator responded to his grievance, and noted that since September 25, he had only submitted one medical request and it was a request for dental care.  *Id.*  Ramey did not return to the medical unit until September 5, 2014, but medical staff determined that he did not have an injury at that time.  Def. Mem. at 3.

On March 20, 2015, Ramey initiated this action by filing an application to proceed *in forma pauperis* and a proposed complaint in which he asserted claims against the Hill Facility,

3

the Community Education Center ("CEC"), Superintendent John A. Reilly, Jr. ("Reilly"), the assistant superintendent, Donna Mellow ("Mellon"),[4] the medical director, Dr. Ronald Phillips ("Dr. Phillips"), a health service administrator, N. Smith ("Smith"), and a grievance coordinator, E. Asante ("Asante").  Doc. No. 1.  In the complaint, it appeared that Ramey was asserting claims for constitutional violations under 42 U.S.C. § 1983 for the defendants' actions in failing to provide him with adequate medical care following the accident.  Complaint, Doc. No. 1-1.

On April 29, 2015, the court entered a memorandum opinion and order after evaluating the application to proceed *in forma pauperis* and screening the complaint under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.  Doc. Nos. 2, 3.  In those documents, the court, *inter alia*: (1) granted the application to proceed *in forma pauperis*; (2) dismissed the claims against the Hill Facility with prejudice because it was not a "person" subject to suit under 42 U.S.C. § 1983; (3) dismissed without prejudice the claims against CEC because it was not subject to *respondeat superior* liability and Ramey had not included allegations of a policy or custom that would subject CEC to liability under *Monell v. New York City Department of Human Services*, 436 U.S. 658 (1978); (4) dismissed without prejudice his claims against the named individual defendants because he had not included allegations reflecting anything other than potentially negligent conduct and had not alleged how these defendants were either personally involved in his medical care (or lack thereof) or how they acted with deliberate indifference toward him or his serious medical needs; and (5) dismissed his claims for injunctive relief with prejudice because he was no longer incarcerated at the Hill Facility.  *See* Memorandum Op. at 1-2, Doc. No. 2; Order at 1-3, Doc. No. 3.  The court also granted Ramey leave to file an amended complaint within thirty days.  Memorandum Op. at 2; Order at 3.

---

[4] As discussed in the court's February 22, 2016 order, Ramey incorrectly identified this individual as Donna Mellow, but her name is Donna Mellon.  Order at 1, n.1, Doc. No. 27.

Ramey requested an extension of time to file an amended complaint, which the court granted, and filed a motion for leave to file an amended complaint on June 29, 2015. Doc. Nos. 5, 6, 9. The court granted the motion on July 21, 2015, and ordered the clerk of court to docket the two pleadings attached to the motion as the amended complaint. Doc. No. 10.

In the amended complaint, Ramey again named the individual defendants, and also added "Jane Doe," a physician, and "John Doe," a physician's assistant. Am. Compl. at 1. Ramey alleges the following facts in the amended complaint:

> On 9/11/13, [w]hen I got out of bed for breakfast, I leaped out of the top bunk (no ladder) and landed awkwardly on my right ankle. After taking a few steps, I immediately felt a sharp pain in my lower right back which did not feel right. After shift change, I told Correctional Officer (C.O.) Boye about my problems and I was transported to medical via wheelchair. Upon arrival, I was denied medical attention and was sent back to housing unit. After falling in shower room, C.O. Boye got Nurse Fullard to come see me in the cell and she with C.O. Boye sent me back to medical via wheelchair on 9/17/13. Medical then seen [sic] how unbalanced I was and how swollen my ankle was so they housed me on [sic] medical.

*Id.* at 3. Based on these allegations, Ramey seeks declaratory relief, compensatory damages, and punitive damages against the defendants. *Id.* at 5.

On September 16, 2015, Asante, Mellon, Dr. Phillips, and Reilly filed a joint motion to dismiss the amended complaint. Doc. No. 20. On November 2, 2015, Ramey filed an opposition to the motion to dismiss. Doc. No. 22.

The court held an initial pretrial conference with the parties via telephone on February 17, 2016. Based upon the court's discussion with the parties during the initial pretrial conference and review of Asante, Mellon, Dr. Phillips, and Reilly's motion to dismiss, the court entered an order on February 22, 2016, in which the court, *inter alia*: (1) dismissed with prejudice the claims against Smith for failure to state a claim upon which relief may be granted pursuant to the court's authority to dismiss such claims at any time under 28 U.S.C. § 1915(e)(2)(B), and (2)

dismissed with prejudice the claims against Asante, Reilly, and Mellon for failure to state a claim upon which relief may be granted.  Doc. No. 28.  Dr. Phillips filed an answer with affirmative defenses to the amended complaint on March 4, 2016.  Doc. No. 29.

On June 16, 2016, Ramey filed for leave to further amend the complaint to reflect the correct date of the incident and to provide a name for a fictitious defendant.  Doc. No. 33.  The court granted Ramey's motion on July 19, 2016.  The court, *inter alia*, (1) ordered that the fictitious defendant, John Doe, Physician Assistant, be deemed to refer to Kelly Mullan, Physician Assistant, and (2) dismissed the claims against the fictitious defendant, Jane Doe, Physician.  Order at 2, Doc. No. 40.

After the close of discovery Dr. Phillips filed a motion for summary judgment and a statement of undisputed material facts on June 20, 2016.  Doc. Nos. 34, 35.  Ramey requested, and the court granted, an extension of time to respond to Dr. Phillips's motion for summary judgment.  Doc. Nos. 41, 42.  Ramey filed a response to the motion on August 1, 2016.  Doc. No. 43.

## II.   DISCUSSION

### A.   Standard of Review

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").  The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252.  Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor").  Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and

7

provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Thus, it is not enough to "merely [] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case."  *Jones v. Beard*, 145 F. App'x 743, 745-46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322).  Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).  Nonetheless, when one party's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not take those claims as true for the "purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Analysis

As to the remaining defendants, the undisputed material facts confirm that Ramey has not established a constitutional violation.  To succeed on an Eighth Amendment claim, a plaintiff

8

must establish "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  A serious medical need "must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death.  Moreover, the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005).

Deliberate indifference requires the denial of care where the defendant has knowledge of the need for medical care, but intentionally refuses to provide it, or where the "denial exposes the inmate to undue suffering or the threat of tangible residual injury."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting cases).  If the inmate is provided treatment, his "mere disagreement [with that treatment] is not an actionable constitutional violation."  *Boomer v. Lewis*, 541 F. App'x 186, 191 (3d Cir. 2013) (citing *Lanzaro*, 834 F.2d at 346).

First, Ramey's injuries to his ankle and back are not the type of injuries within the purview of the Eighth Amendment.  As to his ankle, when Ramey first visited the medical unit, he denied having an injury, and merely reported that he was having difficulty raising his leg.  While his ankle was swollen, this cannot be characterized as a life-threatening, permanent injury.  *See, e.g.*, *Chatin v. Artuz*, 28 F. App'x 9, 10 (2d Cir. 2001) ("[The plaintiff's] condition, which medical staff at various stages of his treatment diagnosed as a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires.").  After spending a week in the medical unit, Ramey's ankle was no longer swollen, and it was stable.  As to his back, Ramey did not complain of back pain resulting from the bunk bed incident during

the week he spent in the medical unit.  Nor did medical staff notice any back issues during their examinations of Ramey.  When he returned to the medical unit nearly a year later, the medical staff noted no injuries.  Accordingly, Ramey's ankle and back injuries do not rise to the level of a serious medical need and cannot form the basis of an Eighth Amendment violation.

Even if Ramey's injuries did constitute a serious medical need, Dr. Phillips was not deliberately indifferent to his injuries.  When Ramey saw Dr. Phillips on September 25, 2013, Dr. Phillips conducted an examination of his ankle, determined that it was stable and no longer swollen, and gave him a low bunk pass.  There is no indication that Ramey complained of any further injury at that time.  Ramey has not established that there was any denial of or delay in care when he submitted sick requests, that he submitted any sick requests to which the medical staff did not respond, or that Dr. Phillips failed to provide any requested care, let alone that he was deliberately indifferent.  If Ramey, who received medical care at the Hill Facility and from Dr. Phillips, seeks to challenge the adequacy of his medical care or Dr. Phillips's judgment, a constitutional claim is an inappropriate vehicle by which to do so.  *See White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990) ("Mere medical malpractice cannot give rise to a violation of the Eighth Amendment.  Only unnecessary and wanton infliction of pain, or deliberate indifference to the serious medical needs of prisoners . . . are sufficiently egregious to rise to the level of a constitutional violation." (internal citations and quotation marks omitted)); *see also Warren v. Boggio*, No. CIV. A. 11-6050, 2012 WL 3114691, at *4 (E.D. Pa. July 31, 2012) ("While deliberate indifference may be demonstrated by an intentional denial or delay of medical care, where a prisoner has received some medical care and alleges mistreatment because of a dispute over the adequacy of that care, the courts should be 'reluctant to second guess medical judgments

and to constitutionalize claims which sound in state tort law.'" (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)).

As to Mullan, while she has not yet been served, and thus has not filed a motion for summary judgment, the court has screening authority to dismiss a claim in which a *pro se* litigant is proceeding *in forma pauperis* at any time if the court determines that the action fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).[5] According to the record, Mullan only saw Ramey once—on September 18, 2013—when he first arrived at the medical unit and denied any injury. Mullan's notes indicate that she observed Ramey overnight and followed up with Dr. Phillips in the morning. Ramey has provided no evidence that he was ever denied medical treatment, or that Mullan acted with deliberate indifference during the course of his treatment. Thus, the court will also dismiss Ramey's Eighth Amendment claim against Mullan.[6]

### III.   CONCLUSION

Ramey claims his treatment following his complaints of an ankle injury and back pain violated the Constitution. After, viewing the factual record and the undisputed evidence of record in the light most favorable to Ramey as the non-moving party, the court finds that there are no genuine issues of material fact and neither Dr. Phillips nor Mullan's conduct amounted to deliberate indifference. Therefore, the court will grant Dr. Phillips's motion for summary judgment and dismiss the claim against Mullan.

---

[5] While Mullan has not filed a motion of her own, the parties agreed during a telephone conference with the court on July 14, 2016, that the defendants' summary judgment motions would also apply to Mullan.

[6] The court recognizes that it should ordinarily grant leave for a *pro se* plaintiff to amend unless doing so would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113-14 (3d Cir. 2002). Nevertheless, as Ramey has had the opportunity to fully develop the record and has failed to show genuine issues of material fact to support the case moving forward to trial, the court finds that granting leave to amend would be futile.

A separate order follows.

                                         BY THE COURT:


                                         /s/ *Edward G. Smith*
                                         EDWARD G. SMITH, J.